**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBBIE PITTMAN, on behalf of herself and all others similarly situated, | ) | Case No. 1:25-cv-7938 |
| Plaintiffs, | ) | District Judge Jeremy C. Daniel |
| v. | ) | |
| GAVRIELI BRANDS, LLC, | ) | Magistrate Judge Maria Valdez |
| Defendant. | ) | |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR SANCTIONS

## PRELIMINARY STATEMENT

Defendant submits this memorandum of law in opposition[1] to Plaintiff's motion for voluntary dismissal of the complaint and in support of its cross-motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 12205, and for sanctions against Plaintiff's counsel[2] pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

Plaintiff has filed 44 nearly identical website accessibility lawsuits in this Court since March 17, 2025, and Plaintiff's counsel has filed more than 1,200 similar lawsuits in federal court, including 765 lawsuits in this Court, since August 23, 2024. These boilerplate, fill-in-the-blank complaints assert claims under the Americans with Disabilities Act ("ADA"), purportedly to eliminate access barriers to the online shopping experience for visually impaired individuals. But in truth, these lawsuits amount to nothing more than a systematic effort to abuse the legal system in the wake of ambiguous regulatory requirements, all in a designed scheme to force quick monetary settlements from businesses across the country.

The record before this Court demonstrates that Plaintiff and her counsel did not have any intention of litigating the merits of the claims against Defendant. Indeed, once it became clear to Plaintiff and her counsel that Defendant was prepared to vigorously defend the case rather than settle, Plaintiff and her counsel, on essentially the eve of the discovery deadline, sought to abandon the claims. Plaintiff's proffered excuse for seeking dismissal—i.e., that "the injunctive relief sought in this action is no longer necessary" based on "Plaintiff's continued investigation and evaluation during the course of this litigation," namely "Defendant's subsequent remediation of the barriers [on the Website]"—is disingenuous and belied by the fact that Defendant repeatedly

---

[1] Defendant does not oppose the dismissal of this action with prejudice; rather, Defendant opposes the portion of Plaintiff's motion seeking for "each party to bear its own attorneys' fees and costs." *See generally* Dkt. No. 32.

[2] Plaintiff's counsel herein refers to David B. Reyes, Esq., of Equal Access Law Group PLLC.

provided evidence over the past nine (9) months demonstrating that the Website is accessible and, therefore, injunctive relief was "no longer necessary" (if ever necessary) as of October 3, 2025, if not earlier, specifically September 24, 2025, when Defendant provided Plaintiff with the first of eight clean audit reports. In other words, and even assuming *arguendo* Plaintiff's claims were not baseless when she commenced this action, her continued pursuit of the claims after October 3, 2025, which forced Defendant to incur substantial legal fees in connection with bad faith discovery and related disputes which remain unresolved, was undoubtedly frivolous, warranting an award of attorneys' fees and costs to Defendant, as well as the imposition of sanctions on Plaintiff's counsel.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For a detailed recitation of the factual background and procedural history in this case, Defendant respectfully refers the Court to the accompanying Declaration of Ross M. Greenky, dated July 17, 2026, with exhibits ("Greenky Decl.").

## **ARGUMENT**

"The potential for abuse of the ADA has been noted in numerous cases in districts throughout the country." *Access 4 All, Inc., v. Thirty E. 30th St. LLC*, 2006 U.S. Dist. LEXIS 96742, at *34 (S.D.N.Y. Dec. 11, 2006). "This kind of ADA litigation saps judicial resources, wastes attorneys' and litigants' time, and ultimately mocks the statute's mission." *Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 3d 21, 27 (E.D.N.Y. 2023) (internal quotations and alteration omitted). "The limited resources of the federal courts need to be marshaled for resolving genuine disputes, not to provide a platform for extracting nuisance settlements that do little, if anything, to further the important goals of the ADA." *Id*.

Judge Seeger recently hit the nail on the head when he referred to Plaintiff's counsel's complaints as "a glorified copy-and-paste operation," aptly suggested that the lawsuits "feel

extortionate," and concluded that the cases "have a questionable footing." *Henry v. Omoi, Inc*., 2026 U.S. Dist. LEXIS 46591, at *5-10 (N.D. Ill. Mar. 6, 2026); *see also Winegard*, 674 F. Supp. 3d at 27 (describing these lawsuits as a "scheme of systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements such that the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)."); *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) ("A hallmark of abusive ADA litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit. . . . The ability to file essentially the same complaints over and over again, combined with the hope of intimidating the defendant into an early settlement (or of obtaining a default judgment), allows for a quick recovery of attorney's fees with relatively minimal difficulty.").

Notably, Plaintiff's counsel was recently sanctioned by this Court in another one of Plaintiff's cases for "repeated lack of candor" and "disingenuous use of discovery to generate fees." *See Pittman v. Hazel and Olive, Inc.*, Case No. 25-cv-7791, at Dkt. No. 49 (N.D. Ill. March 19, 2026). Plaintiff's counsel is otherwise no stranger to the threat of sanctions by other district courts. *See Hippe v. Retention Brands, LLC*, 2026 U.S. Dist. LEXIS 138677, at *7 (E.D. Wis. June 23, 2026); *Sumlin v. New Lingwood USA, Inc.*, 2026 U.S. Dist. LEXIS 8541, at *4 (S.D.N.Y. Jan. 15, 2026); *Hippe v. Cir. City Corp.*, 2025 U.S. Dist. LEXIS 205843, at *7 (E.D. Wis. Oct. 20, 2025).

## I. PLAINTIFF'S MOTION SHOULD BE DENIED (IN PART)

As previously noted, Defendant opposes Plaintiff's motion to voluntarily dismiss this action with prejudice only to the extent that she seeks an Order for "each party to bear its own attorneys' fees and costs." *See generally* Dkt. No. 32. To that end, for the reasons set forth herein

and in the accompanying declaration, Defendant respectfully requests that the Court grant its cross-motion for attorneys' fees and sanctions.

## II. DEFENDANT'S CROSS-MOTION SHOULD BE GRANTED

### A. Applicable Legal Standards

#### 1. Prevailing Party Under the ADA

Under the ADA, a court has the discretion to award reasonable attorneys' fees and costs, to the prevailing party. 42 U.S.C. § 12205. A prevailing defendant is entitled to such an award "only when the suit is brought in bad faith or when it is 'frivolous, unreasonable, or without foundation.'" *Simmons v. Vill. of Minier*, 2022 U.S. Dist. LEXIS 91113, at *9 (C.D. Ill. May 20, 2022) (quoting *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1018 (N.D. Ill. 2002)).

"A litigant 'prevails' (for the purpose of fee-shifting statutes) when it obtains a 'material alteration of the legal relationship of the parties.'" *Colon v. Hy Supplies, Inc*., 2024 U.S. Dist. LEXIS 106988, at *7-8 (N.D. Ill. May 28, 2024) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res*., 532 U.S. 598, 603-04 (2001)). "Dismissal with prejudice, even when voluntarily sought by plaintiff, materially alters the legal relationship of the parties." *Id.* at *9 (citing *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008)).

#### 2. Sanctions and the Court's Inherent Power

An attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 is "the appropriate source of authority to 'impose a continuing duty upon attorneys to dismiss claims that are no longer viable.'" *Butler v. FDIC*, 2014 U.S. Dist. LEXIS 27682, at *19-20 (N.D. Ill. 2014) (quoting *Jolly Group, Ltd. v. Medline Indus., Inc*., 435 F.3d 717, 720 (7th Cir. 2006)).

"An attorney's liability under Section 1927 is appropriate where an attorney's conduct is marked by bad faith." *Prenda Law, Inc. v. Godfread*, 2014 U.S. Dist. LEXIS 12813, at *9 (N.D. Ill. 2014) (citing *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994)). "The Seventh Circuit has concluded that such sanctions are appropriate (1) in instances of a serious and studied disregard for the orderly processes of justice, (2) when an attorney pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, and/or (3) where a claim is without a plausible legal or factual basis and lacking in justification." *Id*. Section 1927 also requires a causal connection between the misconduct and the fees sought. *See Pable v. Chicago Transit Authority*, 145 F.4th 712, 725–26 (7th Cir. 2025) (noting that objective bad faith exists when an attorney pursues a course that a reasonably careful lawyer would have known, after appropriate inquiry, was unsound).

Courts also have the inherent authority "to impose appropriate sanctions to penalize and discourage misconduct," *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 776 (7th Cir. 2016), "to sanction a party who engages in vexatious litigation," *Simmons v. Vill. of Minier*, 2022 U.S. Dist. LEXIS 91113, at *9 (C.D. Ill. May 20, 2022), and "where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith," *Fuery v. City of Chicago*, 900 F.3d 450, 463-64 (7th Cir. 2018).

### B. <u>Defendant's Request for Attorneys' Fees and Sanctions</u>[3]

Based on the procedural history of this litigation and the pattern of conduct by Plaintiff and her counsel in other website accessibility lawsuits, the conclusion is inescapable that these lawsuits

[3] If Plaintiff's motion for voluntary dismissal is granted, Defendant respectfully submits that, for the sanctionable misconduct detailed *infra* and in the accompanying declaration, it is entitled to reimbursement from Plaintiff of its attorneys' fees as the prevailing party under the ADA. However, even if the Court does not order Plaintiff to reimburse Defendant under the ADA, Defendant respectfully submits that Plaintiff's counsel should be held liable for Defendant's attorneys' fees pursuant 28 U.S.C. § 1927 and the Court's inherent power.

were not filed to litigate the merits of any purported "access barriers" to websites, but rather to excessively drive up legal fees for defendants in an effort to extract settlements based on the cost to defend litigation. *See* Greenky Decl., ¶ 4-71, Exs. A-X.[4]

**1. Plaintiff's claims were baseless when the action was commenced.**

As a threshold matter, there is no regulation governing the standard for website accessibility under Title III of the ADA, only Department of Justice ("DOJ") guidance, issued in March 2022, which notes that businesses have "flexibility" with respect to compliance. *See Guidance on Web Accessibility and the ADA* (March 18, 2022), *available at* https://www.ada.gov/resources/web-guidance/. In fact, the DOJ guidance explicitly states that "Businesses . . . can currently *choose* how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities." *Id.* (emphasis added). Thus, contrary to what is repeatedly suggested in these website accessibility cases (and in Plaintiff's complaint), there is no legal obligation requiring businesses to comply with existing technical

---

[4] Judge Seeger recently and correctly observed as follows about these website accessibility lawsuits:

> The cases often settle, relatively quickly. It is worth pausing to ask why.
>
> Lawsuits impose costs on defendants. All too often, it is cheaper to settle a case — even if it is meritless — than to fight it. From a dollars-and-cents perspective, it is better to settle a case for $5 than to fight it and win at a cost of $10. Defendants have an incentive to get out on the cheap if they can.
>
> Settling a meritless case might make sense from an economic perspective. But writ large, getting defendants to settle case after case is problematic if the cases have a low probability of success. If litigation costs are driving the settlements, then the settlements feel extortionate.
>
> That principle is true even in cases where a defendant pays nothing and simply agrees to change its business practices (like the case at hand). A defendant might decide that changing its website is cheaper than fighting a lawsuit about changing its website.
>
> One could be forgiven for wondering whether that's the situation here. Maybe defendants keep settling these cases — even though they might have no merit — because settling is cheaper than fighting.

*Omoi*, 2026 U.S. Dist. LEXIS 46591, at *5-6.

standards, such as the Web Content Accessibility Guidelines ("WCAG"). *See id.* (noting that the DOJ "does not have a regulation setting out detailed standards," and that "[e]xisting technical standards provide *helpful guidance*") (emphasis added).

The absence of an applicable legal standard for website accessibility is important to note because it highlights the regulatory ambiguity that is being exploited by Plaintiff and her counsel. As detailed *supra*, Plaintiff has filed 44 nearly identical website accessibility lawsuits in this Court since March 17, 2025, and Plaintiff's counsel has filed more than 1,200 similar lawsuits in federal court. *See* Greenky Decl., ¶¶ 4-5, Ex. A. Plaintiff and her counsel have filed these boilerplate, fill-in-the blank complaints as part of a calculated scheme to extract settlements, not because of any genuine interest in the products substituted throughout the complaints or website accessibility in general. Indeed, here, if Plaintiff and her counsel sought to commence a meritorious action, then: (a) Plaintiff would have returned to the Website at some point within the last fourteen (14) months, including at any point after Defendant provided accessibility audit reports repeatedly detecting no access barriers; and (b) Plaintiff would have preserved evidence of her alleged visit to the Website, such as IP address(es), browser artifacts, internet history, cookies, URLs accessed. *See id.* at ¶¶ 12-46, 49, 54-63, 68-69, Exs. G, L-O, S-W. Instead, Plaintiff and her counsel admitted that Plaintiff neither returned to the Website nor preserved any computer-related data showing she ever visited the Website. *See id.* at ¶¶ 18, 27, 36, 40-41, 56-60, 68-69, Exs. G, M, O-P, T-U, W.

**2. The continued litigation after September or October 2025 was frivolous.**

Even assuming *arguendo* that the instant lawsuit was not baseless at its commencement, Plaintiff and her counsel's continued litigation became frivolous either on (1) September 24, 2025, when Defendant provided Plaintiff's counsel with the first of eight accessibility audit reports, which detected no access barriers, on (2) October 3, 2025, when Defendant provided Plaintiff's

counsel with the second of eight accessibility audit reports, which again detected no access barriers, or on (3) October 14, 2025, when Defendant provided Plaintiff's counsel with four additional accessibility reports (generated by scans from multiple devices and using a variety of settings, including the exact settings Plaintiff's counsel purportedly used, as well as even more strict settings), which again detected no access barriers. *See* Greenky Decl., ¶¶ 10-22, Exs. B-K.

Plaintiff produced no documentary evidence during discovery to demonstrate that she actually visited the Website on the date alleged in the complaint, and she failed to preserve and/or refused to produce historical internet browser artifacts, IP addresses, and any other related computer data. *See id.* at ¶¶ 27, 36, 40-41, 56-60, 69, Exs. M, O-P, T-U, W. That aside, the record before the Court demonstrates that Defendant previously did and otherwise has done all that—and more than—the law requires in accordance with the DOJ "flexibility" guidance to ensure that the Website was and remains accessible to visually-impaired individuals. *See id.* at ¶¶ 9-22, 24, 34, 68, Exs. B-K, Q-R. As of October 3, 2025, if not earlier, Plaintiff and her counsel knew that to be true yet neglected to investigate and thereafter refused to dismiss this case for more than nine (9) months, for the sole purpose of driving up Defendant's legal fees in an effort to extract a settlement. *See id.* at ¶¶ 10-71, Exs. B-X.

Plaintiff and her counsel had every opportunity and reason to dismiss this case between September 2025 and July 2026, whether it be in response to numerous e-mail communications challenging the merits of Plaintiff's claims, in response to any one of the eight audit reports showing no access barriers on the Website, in response to the answer to the complaint, after the parties exchanged discovery demands and responses to the same, in response to Defendant's discovery deficiency letters and related e-mail communications, or at any other time leading up to the moment Plaintiff filed a motion to voluntarily dismiss the complaint. *See id.* It bears repeating

in this regard that, despite Defendant producing eight clean audit reports of the Website, Plaintiff produced no evidence that she ever re-visited the Website, let alone attempted to purchase the ballet flats she allegedly desired, and, in fact, Plaintiff's counsel admitted on October 6, 2025 (after Defendant had produced two clean audit reports), that Plaintiff had not re-visited the Website since May 13, 2025, before the lawsuit was filed. *See id.* at ¶¶ 9-22, 24, 34, 68, Exs. B-K, Q–R.

At a minimum, by October 14, 2025, Plaintiff's counsel had received Defendant's audit results generated using Plaintiff's specified settings, Defendant's request for the particular URLs and conditions underlying Plaintiff's contrary results, and Defendant's offer to conduct joint testing by screenshare. *See* Greenky Decl., ¶¶ 15-22, Exs. F-K. A reasonably careful attorney was therefore obligated to investigate whether Plaintiff's allegations remained supportable before continuing to impose litigation and discovery costs on Defendant. *See Pable*, 145 F.4th at 725. Instead, Plaintiff and her counsel continued the action without producing another audit, confirming a revisit to the Website, identifying the allegedly inaccessible URLs, preserving or producing historical internet browser artifacts, IP addresses, and any other related computer data, producing screenshots or underlying source information, identifying the consultants who purportedly evaluated the Website, or otherwise substantiating the continued existence of an access barrier. *See* Greenky Decl., ¶¶ 27, 36, 40-41, 56-60, 68, 69, Exs. G, M, O-P, T-U, W. On this record, the continued pursuit of the action after a reasonable opportunity to investigate was objectively unreasonable and vexatious.

Defendant's requested fees also satisfy *Pable*'s but-for requirement. If Plaintiff's counsel had conducted the required inquiry and discontinued the unsupported action, Defendant would not have incurred the excess fees associated with continued audit-related investigation and correspondence, repeated efforts to obtain promised discovery and supplementation, the

preservation and forensic-inspection dispute, deposition and anticipated motion-to-compel preparation, opposition to Plaintiff's dismissal motion, and the present sanctions proceedings. Those expenses were not merely incurred during the same period as the challenged conduct; they were incurred because Plaintiff and her counsel continued prosecuting the action and multiplying the proceedings after the factual basis for doing so had become objectively unsupportable.

Following a determination of entitlement to reimbursement of legal fees, Defendant will submit contemporaneous billing records segregating the fees attributable to the cutoff date selected by the Court.

### 3. Plaintiff's counsel's conduct is marked by bad faith.

As a result of Plaintiff and her counsel's neglect to investigate and refusal to acknowledge the Website's accessibility, the parties continued to "litigate" this case for nine (9) months, during which time Defendant unnecessarily incurred substantial legal fees that would not have occurred but for Plaintiff and her counsel's discovery delays and obstruction, and other bad faith conduct. *See Pable*, 145 F.4th at 725. Specifically, over that nine-month period:

- Defendant's counsel provided numerous PowerMapper Accessibility Validation Reports from multiple devices using a variety of settings, including the exact settings Plaintiff's counsel purportedly used (and also even stricter settings), which consistently detected no access barriers on the Website. *See id.* at Exs. B, F, H-K, Q-R.
- Despite Defendant's counsel's repeated requests, Plaintiff's counsel never provided any updated PowerMapper (or other) reports conducted after October 2, 2025. *See id.* at ¶¶ 16-22, 68, Ex. G.
- Plaintiff's counsel admitted that Plaintiff never re-visited the Website. *See id.* at ¶¶ 18, 68, Exs. G, M, O-P, U, W.
- Plaintiff's counsel did not produce a single document in response to Defendant's discovery demands. *See id.* at ¶¶ 25-26, 32-33, 35, 53-58, 63, 68-69, Exs. M-P, S, W.
- Plaintiff and her counsel admitted that Plaintiff failed to preserve any evidence relating to alleged access of the Website, including her historical internet browser artifacts, internet browser history, URLs accessed, cookies, IP address(es), and related computer data for the date(s) she allegedly visited the Website. *See id.* at ¶¶ 27, 36, 40-41, 56-60, 69, Exs. M, O-P, T-U, W.

- Plaintiff and her counsel refused to produce for forensic examination the laptop allegedly used to access the Website. *See id.* at ¶¶ 27, 36, 40, 43, 49, 56, 68, Exs. O, P, T, W.
- Plaintiff's counsel continuously flip-flopped positions, provided multiple excuses, and engaged in obvious delay tactics to avoid providing documents and information responsive to Defendant's discovery demand. *See id.* at ¶¶ 25-70, Exs. M-X.
- Plaintiff's counsel filed the instant motion for voluntary dismissal two (2) days after Defendant noticed Plaintiff's in-person deposition and advised Plaintiff's counsel of its intent to file a motion to compel and seek sanctions. *See id.* at ¶¶ 66-67; Dkt. Nos. 30 & 32.

It also should not be overlooked that, after Defendant made it clear to Plaintiff and her counsel that it intended to vigorously defend the case, including deposing Plaintiff and seeking judicial intervention to resolve the outstanding discovery disputes, Plaintiff immediately sought to dismiss her claims. *See id.* at ¶¶ 25-71, Exs. M-X. In this regard, Plaintiff and her counsel seek to dismiss this case not because the Website suddenly became accessible, but rather because Plaintiff and her counsel were faced with the realization that they would have to, among other things, proceed with discovery, respond to a motion to compel, and risk the imposition of sanctions for their egregious conduct and frivolous claims. The short and simple truth is that Plaintiff and her counsel did not have any intention of litigating the merits of the claims against Defendant or against any of the other 43 defendants, as further evidenced by the fact that Defendant's counsel cannot find any evidence to suggest that any of Plaintiff's cases have proceeded beyond the discovery phase of litigation. *See id.* at ¶¶ 4-7, Ex. A.

In sum, the record before the Court is clear that Plaintiff and her counsel litigated in bad faith, warranting the imposition of sanctions and an award of attorneys' fees. *See Mach v. Will Cty. Sheriff*, 580 F.3d 495, 501-02 (7th Cir. 2009) (affirming district court's imposition of sanctions and award of attorneys' fees where the plaintiff engaged in bad faith by continuing to litigate knowingly "worthless" claims); *Claiborne v. Wisdom*, 414 F.3d 715, 722 (7th Cir. 2005)

(affirming district court's imposition of sanctions and award of attorneys' fees against the plaintiff and her attorney, finding that the plaintiff's attorney had "engaged in evasive and dilatory tactics" during discovery).

**4. Plaintiff's counsel has engaged in a pattern of egregious misconduct.**

Defendant's counsel repeatedly warned Plaintiff's counsel to be guided by the decisions in *Jimenez v. Hyatt Corp.*, 2025 U.S. Dist. LEXIS 148432 (E.D. Cal. 2025) and *Pittman v. Hazel and Olive, Inc.*, Case No. 25-cv-7791, at Dkt. No. 49 (N.D. Ill. March 19, 2026), and that Defendant would seek similar relief. Indeed, Defendant's cross-motion tracks, in many respects, similar conduct for which Plaintiff's counsel (in another one of Plaintiff's cases) was recently sanctioned by Judge Alonso. *See id.*[5] Yet, despite already being sanctioned by this Court, Plaintiff's counsel has continued to engage in the same pattern of "repeated lack of candor toward the Court" and "disingenuous use of discovery to generate fees" for which Judge Alonso ordered Plaintiff's counsel to cover the costs and fees incurred by the defendant. *Hazel and Olive, Inc.*, Case No. 25-cv-7791, at Dkt. No. 49.

It should be noted that courts in other jurisdictions have threatened sanctions against Plaintiff's counsel for misconduct in website accessibility lawsuits. For example, last month in another website accessibility case, Judge Adelman issued an order requiring Plaintiff's counsel to show cause why he should not be sanctioned "for false representations made to the Court." *Hippe v. Retention Brands, LLC*, 2026 U.S. Dist. LEXIS 138677, at *7 (E.D. Wis. June 23, 2026). As another example, in *Hippe v. Cir. City Corp.*, Judge Pepper denied Plaintiff's counsel's motion for attorneys' fees, considered sanctions, and cautioned him as follows:

---

[5] Judge Alonso also recently dismissed another website accessibility lawsuit filed by a different serial litigant represented by Plaintiff's counsel for lack of standing. *See Bennett v. Sweet Candy Company*, 2026 U.S. Dist. LEXIS 146956, at *2-5 (N.D. Ill. July 2, 2026).

> Perhaps the errors . . . are the result of Attorney Reyes's attention being stretched thin by managing hundreds of the web accessibility cases that have inundated the federal courts. Whatever the reason, the court strongly advises Attorney Reyes to take more care in the papers he files with the court or he likely will face Rule 11 sanctions for repeated deficiencies."

*See* 2025 U.S. Dist. LEXIS 205843, at *7 (E.D. Wis. Oct. 20, 2025). In yet another example, earlier this year, Judge Vyskocil denied a motion for default judgment and warned Plaintiff's counsel that "failure to comply with court orders, the Federal Rules, the Local Rules, and this Court's Individual Rules, and to diligently and properly prosecute this case, may result in sanctions, including: monetary penalties on counsel and Plaintiff; preclusion of claims, evidence, and motion practice; and dismissal for failure to prosecute." *Sumlin v. New Lingwood USA, Inc.*, 2026 U.S. Dist. LEXIS 8541, at *4 (S.D.N.Y. Jan. 15, 2026).

The above-described pattern demonstrates that prior sanctions and related warnings have been ineffective in deterring Plaintiff's counsel from engaging in misconduct. That, combined with the policy rationale of deterring frivolous filings (and other bad faith litigation tactics) that crowd dockets and undermine the Court's ability to remedy genuine civil rights violations, necessitates not only an award of attorneys' fees, but perhaps even more substantial sanctions here.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court issue an Order: (a) dismissing Plaintiff's complaint with prejudice, (b) granting the instant cross-motion for attorneys' fees and sanctions, and (c) granting Defendant leave to file a supplemental petition seeking recovery of attorneys' fees and costs incurred, including attorneys' fees incurred in responding to Plaintiff's instant motion and filing the instant cross-motion, together with such other and further relief as the Court deems just and proper.

Dated: July 17, 2026

Respectfully submitted,
GAVRIELI BRANDS, LLC

By: /s/ Sandy L. Morris
One of Their Attorneys

Ross M. Greenky (NY Reg. No. 5320106)
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700
rgreenky@barclaydamon.com

and

Sandy L. Morris (IL ARDC No. 6270309)
Valentine Austriaco & Bueschel P.C.
300 E. Randolph St., Suite 3400
Chicago, Illinois 60601
(312) 288-8285
smorris@vablawfirm.com
*Counsel for Defendant Gavrieli Brands, LLC*

**CERTIFICATE OF SERVICE**

I, Sandy L. Morris, an attorney, hereby certify that on this 17th day of July, 2026, a copy of the foregoing was filed electronically. Parties may access this filing through the court's system.

/s/ *Sandy L. Morris*