# Exhibit G

## Greenky, Ross M.

**From:** Thorpe, Robert J.
**Sent:** Friday, November 7, 2025 3:24 PM
**To:** Michael Ohrenberger
**Cc:** David Reyes; Asher Cohen; EALG Case Managers; Greenky, Ross M.
**Subject:** RE: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Michael: I could be mistaken, but I do not recall receiving a response from you to the e-mail below, nor have I otherwise received the requested documents. Also, immediately below please find my client's perspective on some of these outstanding issues. Thank you. Rob

---

**Oct 8 and 14 requests remain unanswered**:
On October 8 and 14, we requested, among other still unanswered requests: (i) a usable version of the corrupted screenshot (tieks.com_screenshot_100225_50(2).png) and any other relevant screenshots; (ii) a new post-October 2 scan; and (iii) concrete particulars for any current barrier independent of the scans (URL, steps, AT/browser/device, date/time). We have not received any substantive responses.

**Live site status**:
As of yesterday, Thursday, November 6 at 10:05am ET, fresh scans (including the same tool you previously cited) once again show no outstanding accessibility barriers on the live site. Governance remains active (Website Accessibility Policy, Quarterly Testing Protocol, and a live accessibility channel at accessibility@tieks.com / 310-601-8967 with a 2-business-day acknowledgment and 10-business-day ETA).

**Your October 2 output and refusal to re-scan**:
You have not replicated your October 2 output and have declined to run any new scan since October 2, despite repeated invitations and our reproducibility protocol. If you continue to contend there is a current barrier, please run and produce a fresh scan or confirm in writing that you are not relying on automated results.

**Evidence of any alleged current barrier**:
We reiterate once again our request that you provide the following for any alleged current barriers:

- the exact URL(s);
- steps to reproduce (1-2-3 sequence);
- the assistive technology, browser, and device used;
- the date and time observed; and
- a screenshot or short clip demonstrating the issue.

We will attempt to reproduce immediately (or join a same-day screenshare) and, if confirmed, log and address promptly. If an item cannot be reproduced under clean conditions, we will continue to treat your earlier output as stale.

**Plaintiff's stated intent to return and purchase**:
The Complaint asserts Ms. Pittman "will visit the website again immediately upon [correction]" and "still wants to purchase ballet flats." As we have now written and demonstrated with numerous reports multiple times, the site has been confirmed fully accessible. In a recent email you confirmed that plaintiff had not yet returned to the website to purchase a pair of shoes. Please state whether she has since revisited and

successfully purchased. If not, explain why not and identify any current barrier preventing purchase with the particulars listed above.

Please provide the above particulars (or confirm that you cannot identify any current barrier) at your earliest convenience. Absent a substantive response, we will proceed on the basis that there is no present barrier and continue with discovery accordingly.

**Robert J. Thorpe** - Partner
Syracuse (315) 413-7231 (315) 430-7610

---

**From:** Thorpe, Robert J.
**Sent:** Tuesday, October 14, 2025 1:11 PM
**To:** 'Michael Ohrenberger' <Mohrenberger@Ealg.law>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; EALG Case Managers <EALGCaseManagers@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** RE: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Michael,

Can you please send the screenshot (tieks.com_screenshot_100225_50(2).png) in a different format? I was not able to open it and my client received an error message when attempting to do so ("The image file cannot be displayed because it contains errors").

Also, I previously requested that you attempt to recreate the results from the October 2 scan, and in response, you sent me another report from October 2. Can you please run another scan and send me an updated PowerMapper report? We have run multiple scans from different devices using a variety of settings (including the exact settings you apparently used and then even more strict settings), and the reports from each of those scans (see attached) continue to demonstrate that the website has no access barriers. Note that my firm's scans/reports match Gavrieli Brand's scans/reports, whereas your scan/report is the odd one out, so to speak. In that regard, your October 2 report appears to reflect stale or incomplete resources. Automated scanners can report false positives when, among other possible reasons, CSS/JS are blocked or cached (e.g., computed contrast, ARIA initialization, decorative image alt). To remove variables, please clear cache (including service workers), disable extensions, and re-run from a clean profile. If you are able to recreate the same results, or frankly any results that show accessibility issues on my client's website, we can screenshare and run PowerMapper together.

Do you have screenshots of the "multiple barriers that impeded completion of the transaction" from "[w]hen Ms. Pittman attempted to purchase the ballet flats on May 13"? If so, please provide those screenshots, or any other evidence upon which you rely, at your earliest convenience. My client is prepared to further demonstrate to both you and your client that, if there were any access barriers as of May 13, none of those issues exist today, and therefore your client is able to "immediately" visit the website and complete the purchase without risk of "harm," as I have now stated to you numerous times.

It also bears repeating that my client has implemented an ongoing accessibility program (i.e., policy, quarterly testing, accessibility helpline at 310-601-8967 / accessibility@tieks.com). If your client believes any current, user-impacting issue persists, please identify the page URL and steps to reproduce, and in response, my client will verify and, if substantiated, promptly address the issue.

Lastly, below for your consideration (from my client) is a reproducibility checklist and further details on the possible reasons why your scan results may be incorrect (and why you may be unable to reproduce them).

Thank you,

Rob

**<u>Reproducibility checklist</u>:**

1. Open a fresh Chrome profile (no extensions). [Explainer: a fresh profile avoids interference from prior settings or add-ons that can block/alter page code.]
2. DevTools → Network tab → check Disable cache. [Explainer: forces Chrome to fetch the latest files from the server instead of re-using old copies.]
3. Hard reload (Ctrl/Cmd+Shift+R). [Explainer: tells the browser to ignore stored files and download everything again.]
4. Navigate: Home → PLP → PDP → Cart → Checkout. [Explainer: covers the main customer paths so we're testing what matters.]
5. Run PowerMapper; export results. [Explainer: produces a dated report we can compare apples-to-apples.]
6. Share reports + timestamps. [Explainer: lets us line up your run with our deployments and caches.]

**<u>Possible Reasons for Inaccurate or Misleading Results</u>:**

1. ***Stale content and caching/CDN quirks.***
   - Browser cache: Your machine may have served old CSS/JS or HTML. [Explainer: computers save site files for speed; if not cleared, a scan can read yesterday's code and flag issues already fixed.]
   - CDN edge variance: Different users hit different CDN edges; one edge may have served an outdated asset. [Explainer: our files live on many servers; one location can lag a bit, so you might have received an older file.]
   - Service worker/local cache: A previously installed service worker can keep shipping stale resources unless hard-refreshed. [Explainer: a tiny helper in the browser can keep an old offline copy unless forced to update.]
   - Intermediary/proxy caching: Corporate VPNs, proxies, or security gateways can cache or strip resources, breaking pages in ways you don't see. [Explainer: your network may hand you an old or modified version even though the live site is current.]

2. ***Blocked/failed resources during the scan.***
   - 3rd-party files blocked: Ad/privacy blockers or corporate firewalls often block fonts, analytics, tag-managers—changing computed styles and ARIA behavior. [Explainer: if required files are blocked, the page looks "broken" to the scanner and it reports issues that don't exist on a normal load.]
   - Robots/security rules: WAF/robots settings may have throttled the scanner (403/429), so the tool crawled partial markup or fallback states. [Explainer: security tools can slow/deny automated requests; the scanner then sees only half a page and misreads it.]
   - Rate limiting / timeouts: If CSS or icon fonts didn't load, PowerMapper may report missing contrast/labels that aren't actually missing. [Explainer: when styles don't load, text/controls look wrong to the tool even though they're fine when files load.]

3. ***Scanner configuration & scope pitfalls.***
   - Wrong scope or depth: Scanning a staging subdomain, old URL pattern, or a single outdated template instead of live templates. [Explainer: easy to point the tool at the wrong place or only part of the site and draw the wrong conclusion.]

- Authentication state: Scanning unauthenticated views of flows (checkout, account) that require login or consent to render correct labels and error states. [Explainer: some accessibility features appear only after login/consent; scanning the "logged-out" version can misreport.]
- Locale/A-B tests: The scanner may have hit an A/B variant or locale segment with retired components the website doesn't serve broadly. [Explainer: you might have seen an experimental or region-specific version not representative of the main site.]

4. ***Headless automation limits (false positives).***

   Automated tools are conservative and flag issues that manual checks clear.

- Contrast from computed styles: If the scanner missed final CSS/variables, it computes wrong contrast and misflags. [Explainer: without the final styles, math is off and it wrongly says text is too faint.]
- Decorative images: Properly empty alt or aria-hidden="true" images can be flagged as missing alt. [Explainer: the "missing" alt is intentional so screen readers skip decoration.]
- ARIA duplication in dynamic UIs: Components that update IDs/roles at runtime can look duplicated if JS didn't fully execute. [Explainer: before scripts finish, labels can appear "doubled" to a bot though they're fine when loaded.]
- Live regions/modals: If scripts didn't initialize, required attributes/FocusTrap weren't present during the scan snapshot. [Explainer: accessibility features are added by scripts; if they didn't run, the tool thinks they're missing.]
- Keyboard order: Without full DOM hydration, tab order appears illogical when it isn't in the real app. [Explainer: the final, correct keyboard order shows only after the page finishes loading.]

5. ***Timing & deployment windows.***
   - Mid-deploy snapshots: If your scan ran during deploy/rollback, it could have captured transient states. [Explainer: scanning during an update can catch a temporary half-updated page.]
   - Fixes landed after your crawl: Our later report reflects current reality; yours may be a historical artifact. [Explainer: our September 24 run shows the live site ***now***; the June/October snapshot shows ***then***.]

6. ***Environmental factors on your machine.***
   - High-contrast modes/OS settings: System overrides can alter computed styles and cause contrast misreads. [Explainer: accessibility settings in Windows/Mac can change colors/contrast in a way scanners misinterpret.]
   - Unsupported user agent: Some scanners mimic old browsers; our website ships progressive enhancement, so legacy UA got a fallback. [Explainer: if the tool pretended to be an old browser, it saw a simplified "backup" version without the modern accessibility scripts, and flagged issues that don't exist for current browsers.]

---

**From:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Sent:** Friday, October 10, 2025 10:22 AM
**To:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; EALG Case Managers <EALGCaseManagers@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** Re: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Robert,

Apologies for the lack of attachment. Please see the attached report.

Additionally, I have included for your review a screenshot highlighting one of the issues with the cart function. This screenshot is one of many screenshots we have highlighting issues with the website.

Do let me know if your client is interested in a resolution prior to the upcoming deadline.

MICHAEL OHRENBERGER
ASSOCIATE ATTORNEY

716-281-5496
mohrenberger@ealg.law

EQUAL ACCESS LAW GROUP, PLLC

**WARNING:** This E-mail, and any attachments, are covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521. This email may contain confidential and legally privileged information. The contents of this e-mail, and any attachments, are intended solely for the use of the person or entity to whom the e-mail was addressed. This email may also contain information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges, and may be restricted from disclosure by applicable Federal and State laws. If you are not the intended recipient of this email **you are advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited**. If you received this e-mail message in error, please contact the sender by reply e-mail or phone. Please also permanently delete all copies of the original e-mail and any attachments.

---

**From:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Sent:** Friday, October 10, 2025 8:11 AM
**To:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; EALG Case Managers <EALGCaseManagers@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** RE: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Michael: There was no attachment to your e-mail below. Can you please send the report? Thank you. Rob

---

**From:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Sent:** Thursday, October 9, 2025 3:19 PM
**To:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; EALG Case Managers <EALGCaseManagers@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** Re: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Hi Robert,

Thank you for your message.

**1. PowerMapper Settings**
The PowerMapper scan was performed using the standard SortSite Desktop and Accessibility Report under WCAG 2.1 AA parameters, with both PDF Matterhorn 1.02 and WCAG 2.1 AA checks enabled. The attached expanded line report reflects those settings. If your client's internal scan produces different

results, that may be due to differences in the page states, caching, or dynamic scripts that load content after the initial render. We are happy to compare data points so that remediation can be based on a consistent baseline.

**2. Specific Barriers Encountered**
When Ms. Pittman attempted to purchase the ballet flats on May 13, she encountered multiple barriers that impeded completion of the transaction, including:

- Keyboard focus failing to move into the cart dialog after adding an item, leaving her unable to confirm quantities or proceed to checkout;
- Lack of accessible form labels and clear focus indicators in the checkout flow;
- Screen-reader mis-announcements on product-selection and color-choice options; and
- Confusing or redundant navigation landmarks that caused the screen reader to loop back to top-level menus unexpectedly.

Although she could add an item to the cart, the inability to independently verify and complete payment without sighted assistance constitutes a denial of equal access under Title III. The problem was not her assistive technology, which functions properly on compliant sites she visits daily.

**3. Technical vs. Functional Issues**
The October 2 report corroborates barriers corresponding to Ms. Pittman's experience. For example, missing ARIA roles and unlabeled buttons correspond to her inability to navigate the cart dialog and checkout process. These are not "technical" in the abstract but they directly affect usability.

**4. Revisiting the Website**
Ms. Pittman has not revisited the site during litigation because, based on her prior experience and our testing, she understands the same barriers remain. Requiring her to repeatedly attempt a failed transaction serves no purpose and risks further frustration. If your client represents that the specific issues above have been corrected, we are willing to have her revisit and test again under controlled conditions.

**5. Ongoing Harm and Future Injury**
Ms. Pittman continues to desire to browse for and learn about products and the brand from Gavrieli Brands and intends to continue to do so once the website is accessible. The injury is both the prior denial of equal access and the ongoing deterrent effect. The reasonable belief that attempting to use the website again would subject her to the same barriers. Courts have consistently held this satisfies the "real and immediate threat" element of standing.

**6. Compliance Standard**
You are correct the DOJ has not codified WCAG in regulation. However, DOJ enforcement actions, settlement agreements, and the overwhelming weight of case law treat WCAG 2.1 AA as the prevailing benchmark for determining accessibility under the ADA. Your client is, of course, free to choose its method of compliance but the chosen method must result in an equally effective experience for people with disabilities. Our goal is for the website's main and essential functions to work on the screen reader for the visually impaired. We believe that the WCAG 2.1 AA Guidelines should really be the bare minimum.

Our preference remains a practical resolution. If your client wishes to engage in a structured WCAG 2.1 AA remediation plan with an agreed timeline and independent verification, we can discuss settlement terms accordingly.

Sincerely,


MICHAEL OHRENBERGER
ASSOCIATE ATTORNEY

716-281-5496
mohrenberger@ealg.law

EQUAL ACCESS LAW GROUP, PLLC


**WARNING:** This E-mail, and any attachments, are covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521. This email may contain confidential and legally privileged information. The contents of this e-mail, and any attachments, are intended solely for the use of the person or entity to whom the e-mail was addressed. This email may also contain information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges, and may be restricted from disclosure by applicable Federal and State laws. If you are not the intended recipient of this email **you are advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited**. If you received this e-mail message in error, please contact the sender by reply e-mail or phone. Please also permanently delete all copies of the original e-mail and any attachments.

---

**From:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Sent:** Wednesday, October 8, 2025 7:38 AM
**To:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** RE: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Michael,

I appreciate your response, but you did not respond to some of my questions and, for the others, I have additional questions based on your limited responses.

- What settings did you use to run the PowerMapper scan on October 2? Also, if you are able to recreate those results, please send me a detailed report with expanded lines.

- What specific issues did Ms. Pittman encounter when she visited the website on May 13? I am not referring to technical issues your law firm identified via PowerMapper; rather, I am referring to the actual barriers to access your client allegedly encountered. I understand from the Complaint that there was some "confusion" and that your client felt "disoriented," but it appears based on her own allegations that she was ultimately able to add "the desired flats to the shopping cart." I also understand from the Complaint that, "when she added the desired flats to the shopping cart, a cart dialog appeared, but her keyboard focus did not shift into this dialog," and that, "[a]s a result, Plaintiff was unable to interact with or review the contents of her cart effectively." If, as alleged in the Complaint, the desired flats were already in the shopping cart, why was it necessary to further review of the contents of the cart to complete the purchase? That aside, is it possible there is an issue with Ms. Pittman's keyboard or screen-reading software? Did she try any other assistive technologies?

- Which, if any, of the purported accessibility issues reflected in your October 2 report are actually impacting Ms. Pittman's ability to purchase the desired pair of ballet flats on the website? You maintain below that technical reports are merely a "tool," yet you continue to rely upon that same "tool" to suggest that the website is not accessible.

- Why is there "no reason" for Ms. Pittman to revisit the website "while this lawsuit is pending"? Again, she alleges in the Complaint that she (i) "still wants to purchase ballet flats on the website," and (ii) "will visit the website again immediately upon Defendant correcting the numerous accessibility barriers on it." Ms. Pittman filed a lawsuit in federal court based on "harm" she allegedly suffered, and in your own words, that harm was the fact that "Ms. Pittman was unable to complete her intended transaction." You have now seen multiple reports showing there are no access barriers on the website, and if Ms. Pittman's allegations in the Complaint are true, why would she not "immediately" purchase the ballet flats (which are presumably still sitting in her shopping cart)? Worst case, she revisits the website and discovers there are new or different accessibility issues that impact her experience (despite what the multiple accessibility reports show), at which point your client and my client can work together, through their respective legal counsel, to address any such concerns. After all, as you suggested below, "this case is about fixing substantive issues that impact real-world use of the website."

- Upon what basis, if any, does Ms. Pittman claim a real and immediate threat of future injury? Apparently she has not even visited the website since May 13.

Please respond to the questions above at your earliest convenience so that my client can promptly evaluate and address any additional concerns raised by your client with respect to the website.

Lastly, thank you for confirming that there is no DOJ regulation requiring private businesses to adhere, substantially or otherwise, to the WCAG.

Rob

---

**From:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Sent:** Monday, October 6, 2025 1:31 PM
**To:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** Re: Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Counsel,

To answer your question regarding harm: Ms. Pittman was unable to complete her intended transaction. That is the very injury the ADA is designed to prevent.

As for revisiting the website, there is no reason for her to do so while this lawsuit is pending and while our understanding is that the website remains inaccessible. Once the website is fixed and during the remediation period, she intends to return. If you are confident the site is fully functional, I can ask her to revisit. If you are not confident, I prefer not to frustrate my client by subjecting her again to the same barriers she has already experienced.

With respect to standards, you are correct that the DOJ has not codified WCAG, but courts consistently rely on WCAG 2.1 AA as the benchmark. DOJ's "flexibility" guidance does not give businesses license to ignore barriers that deny equal access.

At the end of the day, this case is about fixing substantive issues that impact real-world use of the website — things like being able to navigate, view items, see sales or promotions, add products to the cart, and complete transactions independently. Technical reports are a tool, but the ultimate concern is whether people with disabilities can actually use the site in a meaningful way.

We remain open to discussing resolution if your client is prepared to commit to a WCAG 2.1 AA remediation plan and settlement terms.


MICHAEL OHRENBERGER
ASSOCIATE ATTORNEY

716-281-5496
mohrenberger@ealg.law

EQUAL ACCESS LAW GROUP, PLLC


**WARNING:** This E-mail, and any attachments, are covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521. This email may contain confidential and legally privileged information. The contents of this e-mail, and any attachments, are intended solely for the use of the person or entity to whom the e-mail was addressed. This email may also contain information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges, and may be restricted from disclosure by applicable Federal and State laws. If you are not the intended recipient of this email **you are advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited**. If you received this e-mail message in error, please contact the sender by reply e-mail or phone. Please also permanently delete all copies of the original e-mail and any attachments.

---

**From:** Thorpe, Robert J. <RThorpe@barclaydamon.com>
**Sent:** Friday, October 3, 2025 5:36 PM
**To:** Michael Ohrenberger <Mohrenberger@Ealg.law>
**Cc:** David Reyes <Dreyes@Ealg.law>; Asher Cohen <Acohen@Ealg.law>; Greenky, Ross M. <rgreenky@barclaydamon.com>
**Subject:** Debbie Pittman v. Gavrieli Brands, LLC [IMAN-ACTIVE.FID3486967]

Michael,

My client ran another scan, this time also selecting the "PDF Matterhorn 1.02" that appeared in your report, such that every possible check is toggled on when performing the scan, and it still shows zero errors (see attached). What settings did you use to run the scan yesterday? Also, if you are able to recreate those results, please send me a detailed report with expanded lines.

Regardless, did any of the issues in your updated report impact Ms. Pittman's ability to purchase the desired pair of ballet flats on the website? My client remains committed to accessibility, so if there are any *actual* access barriers (as opposed to technical issues which do not impact user experience) despite the existence of multiple PowerMapper reports showing otherwise, please have your client identify the specific issue(s) so my client can evaluate same.

The answers to my previous questions also remain unanswered, specifically:

- What "harm" has your client suffered?

- Has your client visited the website and attempted to purchase “a pair of high-quality, stylish ballet flats” since the lawsuit was filed on July 14? It bears repeating in this regard that your client alleges in the Complaint that she (i) “still wants to purchase ballet flats on the website,” and (ii) “will visit the website again immediately upon Defendant correcting the numerous accessibility barriers on it.”

- If your client has not re-visited the website and attempted to complete a purchase, why not (and upon what basis does she claim a real and immediate threat of future injury)?

Further, what is your version of “compliance with the ADA” in context of website accessibility? Can you point me to the DOJ regulation under the ADA requiring private businesses to adhere, substantially or otherwise, to the WCAG? The guidance issued by the DOJ on “Web Accessibility and the ADA,” available here, notes that businesses have “flexibility” with respect to compliance, and that existing technical standards, such as the WCAG, merely provide “helpful guidance” for businesses. In fact, the DOJ guidance explicitly states that “Businesses . . . can currently choose how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities.” Ms. Pittman does not have the power to dictate a heightened standard for website accessibility, particularly when the DOJ has given Gavrieli Brands the right to “choose” the manner by which it achieves compliance with the ADA.

Again, my client has gone above and beyond to ensure that the website is accessible, and both you and your client know that to be true. She should “immediately” visit the website and purchase a pair of ballet flats, as she alleged in the Complaint she would do, because there is nothing preventing her from doing so.

Thank you,

Rob


**Robert J. Thorpe**

Partner

BARCLAY DAMON LLP
Barclay Damon Tower • 125 East Jefferson Street • Syracuse, NY 13202
D: (315) 413-7231 • F: (315) 703-6268 • C: (315) 430-7610
E: RThorpe@barclaydamon.com

**www.barclaydamon.com • vCard • Profile**



This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.