**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBBIE PITTMAN, on behalf of herself and all others similarly situated, | ) | Case No. 1:25-cv-7938 |
| Plaintiff, | ) | District Judge Jeremy C. Daniel |
| v. | ) | |
| GAVRIELI BRANDS, LLC, | ) | Magistrate Judge Maria Valdez |
| Defendant. | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR SANCTIONS**

## PRELIMINARY STATEMENT

Defendant Gavrieli Brands, LLC ("Defendant") submits this reply memorandum of law in further support of its cross-motion for reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 12205, and for sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

Plaintiff's opposition confirms what Defendant's cross-motion detailed: that. whatever foundation may have existed at filing, Plaintiff's counsel continued this action after the objective record required reassessment, and abandoned when scrutiny became unavoidable. Plaintiff produced no documents in response to Defendant's discovery demands, preserved no evidence of her alleged visit to the Website, never revisited the Website after filing suit, and dismissed the case the day after her deposition was noticed (and only after Plaintiff's counsel was advised of Defendant's intent to file a motion to compel and seek sanctions). Plaintiff's counsel's reliance on an undisclosed "non-testifying consultant" does not excuse nine months of discovery obstruction and evasion; it underscores the frivolousness of the continued litigation. By October 14, 2025, Plaintiff's counsel had received six clean accessibility audit reports from Defendant—using the same evaluation tool Plaintiff's counsel relied upon. Her counsel called Defendant's remediation efforts "commendable," yet continued litigating without identifying a single inaccessible URL, producing a single screenshot, or accepting Defendant's repeated offers to conduct joint testing.

A reasonably careful attorney had a continuing duty to determine whether Plaintiff's allegations remained viable before imposing further litigation costs on Defendant. Plaintiff's counsel did not discharge that duty. The record independently supports fees and sanctions; the timing of Plaintiff's tactical dismissal, and the history of similar cases and prior sanctions bear on

the amount needed for deterrence. Indeed, this is the second time this Court has confronted this same Plaintiff's counsel's pattern of "repeated lack of candor" and "disingenuous use of discovery to generate fees" in a website accessibility case filed by this Plaintiff.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION CONFIRMS RATHER THAN REFUTES FRIVOLOUSNESS

#### A. Plaintiff Impliedly Conceded Critical Facts

Plaintiff did not respond to several important facts and related arguments in opposition to the instant cross-motion. Indeed, notably absent from Plaintiff's opposition is any substantive response to the following points and arguments.

- There is no regulation governing the standard for website accessibility under Title III of the ADA, only Department of Justice ("DOJ") guidance, issued in March 2022, which notes that businesses have "flexibility" with respect to compliance. *See Guidance on Web Accessibility and the ADA* (March 18, 2022), available at https://www.ada.gov/resources/web-guidance/. In fact, the DOJ guidance explicitly states that "Businesses . . . can currently *choose* how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities." *Id.* (emphasis added). Thus, contrary to what is repeatedly suggested in these website accessibility cases (and in Plaintiff's complaint), there is no legal obligation requiring businesses to comply with existing technical standards, such as the Web Content Accessibility Guidelines ("WCAG"). *See id*. (noting that the DOJ "does not have a regulation setting out detailed standards," and that "[e]xisting technical standards provide *helpful guidance*") (emphasis added).

- Plaintiff never returned to the Website, including at any point after Defendant provided accessibility audit reports repeatedly detecting no access barriers.

- Despite Defendant's counsel's repeated requests, Plaintiff's counsel never provided the particular URLs and conditions underlying Plaintiff's purportedly contrary audit report results, or accepted Defendant's offer to conduct joint testing by screenshare.

- Plaintiff's counsel never provided any updated PowerMapper (or other) reports conducted after October 2, 2025.

- Plaintiff and her counsel failed to preserve and/or refused to produce any documentary evidence of her alleged visit to the Website, such as IP address(es),

browser artifacts, internet history, cookies, URLs accessed, and any other related computer data.

- Plaintiff and her counsel refused to produce for forensic examination the laptop allegedly used to access the Website.
- Plaintiff did not produce a single document in response to Defendant's discovery demands.
- Plaintiff's discovery responses materially changed from use of a "standard residential internet connection" to use "exclusively" of a hotspot connection, without reconciling the two descriptions.

*Compare* Dkt. Nos. 40 *with* Dkt. No. 45.

"The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *Eilts v. Menard Inc.*, 2025 U.S. Dist. LEXIS 276922, at *31 (C.D. Ill. 2025). Accordingly, Plaintiff has conceded each of the above-referenced facts. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466–67 (7th Cir. 2010); Arkeyo, LLC *v. Saggezza, Inc.*, 2025 U.S. Dist. LEXIS 282925, at *5-6 (N.D. Ill. Mar. 6, 2025) (granting motion for attorneys' fees where the plaintiff failed to "respond meaningfully" to arguments raised by the defendant in its motion for fees).

### B. Even If the Filing Had an Initial Foundation, Plaintiff's Counsel Had a Continuing Duty to Reassess

Even assuming Plaintiff's uncorroborated account of a single visit to the Website, it does not justify continuing the case after contrary evidence accumulated. Plaintiff produced no documents in response to discovery demands, preserved no IP-address or browser evidence, never revisited the Website, and never supplied a reproducible functional barrier. The fee and sanctions analysis therefore should focus at minimum on the period after counsel received Defendant's contrary audits and after Plaintiff's discovery responses failed to substantiate the claim. This is not a case where "decisive facts may not emerge until discovery." *See Christiansburg Garment Co.*

*v. EEOC*, 434 U.S. 412, 422 (1978). Here, the decisive facts—whether Plaintiff ever accessed the Website and whether access barriers persisted—were entirely within Plaintiff's control to preserve and produce, yet she preserved and produced none of them.

The opposition's reliance on *Christiansburg*, cautioning against "hindsight logic," is misplaced. *Christiansburg* protects plaintiffs whose claims rest on a reasonable foundation that later proves insufficient at trial. It does not shield plaintiffs who file complaints unsupported by any documentary evidence and then refuse to substantiate their claims during discovery. Nor does it erase Plaintiff's counsel's continuing duty to dismiss a claim that is no longer viable. *See Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

The Seventh Circuit has recognized that an action is frivolous when a plaintiff advocates positions that are unsupported by the record, whether initially or made apparent during discovery. *See generally Hermes v. Hein*, 742 F.2d 350, 358 (7th Cir. 1984). Whatever the initial foundation, Plaintiff later produced no substantiating evidence, and counsel continued without resolving the widening conflict between Plaintiff's position and the objective record.

### C. **Inaccurate and Shifting Discovery Responses Demonstrate Objective Unreasonableness**

Plaintiff's opposition glosses over a striking inconsistency in Plaintiff's own discovery responses. In her first supplemental discovery responses dated February 20, 2026, Plaintiff stated that "she accessed the website at issue using a Dell Windows 10 laptop computer and a standard residential internet connection." *See* Dkt. No. 40-17, Supplemental Answer to Request No. 23. In her second supplemental discovery responses dated April 10, 2026 — less than two months later — Plaintiff stated that she "does not utilize a traditional home internet router or any other fixed internet connection" and "accessed Defendant's Website exclusively through a hotspot connection using her Dell laptop." *See* Dkt. No. 40-22, Second Supplemental Answer to

Interrogatory No. 15. These statements cannot both be true. Plaintiff and her counsel offer no explanation for this direct contradiction. The material change either demonstrates that Plaintiff's counsel filed discovery responses without verifying their accuracy or that Plaintiff was not truthful. Either way, the conduct supports — rather than undermines — objective unreasonableness.

### D. The Non-Testifying Consultant Assertions Do Not Establish Objective Good Faith

Plaintiff's reliance on an undisclosed "non-testifying consultant" actually underscores the frivolousness of the continued litigation. Plaintiff's counsel claims to have obtained technical evaluations of the Website on six occasions between June 2025 and June 18, 2026, *see* Dkt. No. 45 at p. 4, yet Plaintiff admittedly never produced these evaluations, never identified the consultant, never explained the consultant's methodology or qualifications, and never identified the specific pages or features the consultant allegedly found inaccessible. Defendant was forced to litigate entirely in the dark, unable to examine the purported consultant's assertions, compare methodologies, or verify whether the alleged barriers purportedly identified by the consultant were user error, configuration differences, or non-existent.

Defendant need not deny that Rule 26(b)(4)(D) may protect non-testifying-expert work in the ordinary course. The point is narrower: Plaintiff's counsel's subjective receipt of the consultant's reports does not establish objectively reasonable reliance where Plaintiff asks the Court to credit counsel's selected conclusions while withholding the reports, metadata, methodology, URLs, settings, and results that could confirm or rebut those conclusions.

Plaintiff's counsel attempts to use the unnamed consultant and reports as both a sword and shield. Plaintiff's counsel states that his declaration is not intended to "disclose, characterize, or place at issue" the consultant's facts or opinions, but then asks the Court to credit the consultant's alleged conclusions as counsel's central good-faith defense to the instant cross-motion for

attorneys' fees and sanctions. *See* Dkt. No. 45-1, ¶¶ 4, 5, 9, 19. Plaintiff's counsel's reliance on undisclosed, non-testifying consultant assessments, which they never intended to produce or identify, cannot justify the continued imposition of substantial litigation fees on Defendant.

### E. **Plaintiff's Continued Prosecution After October 2025 Was Objectively Unreasonable**

The Seventh Circuit has observed that "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Pable v. Chicago Transit Authority*, 145 F.4th 712, 725 (7th Cir. 2025) (quoting *Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)). By October 14, 2025, Plaintiff's counsel had received: (1) clean audit reports using Plaintiff's own specified settings, (2) multiple requests for the particular URLs and conditions underlying Plaintiff's contrary results, and (3) an offer to conduct joint testing by screenshare. A reasonably careful attorney was obligated to investigate before imposing further litigation costs on Defendant. Plaintiff's counsel instead continued without producing any post-October 2 audit reports, confirming Plaintiff's revisit to the Website, identifying an inaccessible URL, or otherwise substantiating a continuing access barrier. *Pable* holds that § 1927's "because of" language requires a but-for connection between misconduct and the excess fees awarded. 145 F.4th at 725–26. That standard supports fees caused by continued prosecution after the warning points in the record, not merely a Rule 54 estimate untethered to causation.

Plaintiff's opposition asserts that its counsel's "non-testifying consultant" continued to find barriers through June 2026, and that her counsel was therefore entitled to continue litigating this action. Plaintiff's assertion raises more questions than it answers. Plaintiff never identified this consultant, never produced the consultant's reports, never disclosed the consultant's methodology, and never explained why the consultant's findings contradicted Defendant's eight clean audits. A

plaintiff who withholds all evidence supporting her claim, refuses to revisit the website at issue, and declines to identify or produce her purported expert's work cannot credibly invoke *Christiansburg*'s protection for claims supported by a reasonable factual foundation.

Further, as a "non-testifying expert," the consultant testimony and reports are not evidence. Plaintiff could not have used those reports to oppose summary judgment, to support her claims at trial, or for any other evidentiary purpose in this action. This context is vital considering neither Plaintiff nor her counsel dispute that:

- Plaintiff did not produce a single document in response to Defendant's discovery demands, including any documentation showing access barriers on the Website.
- Plaintiff never returned to the Website, including at any point after Defendant provided accessibility audit reports repeatedly detecting no access barriers.
- Defendant provided eight clean accessibility audit reports using the same evaluation tool and settings used by Plaintiff.
- Despite Defendant's counsel's repeated requests, Plaintiff's counsel never provided the specific URLs, steps to reproduce, assistive technology settings, dates underlying any contrary findings, and conditions underlying Plaintiff's contrary audit report results, or accepted Defendant's offer to conduct joint testing by screenshare.
- Despite Defendant's counsel's repeated requests, Plaintiff's counsel never provided any updated PowerMapper (or other) reports conducted after October 2, 2025.

*See* Dkt. Nos. 45 – 45-1.

Plaintiff's assertion that "websites are dynamic" and that audits are only a "point-in-time assessment", *see* Dkt. No. 45-1 at ¶ 8, actually strengthens Defendant's position, not Plaintiff's. If the dynamic nature of websites was Plaintiff's counsel's genuine concern, the obvious remedy was to have Plaintiff revisit the Website and document any barriers she encountered, or provide Defendant with a follow-up audit report, or to accept Defendant's joint testing offer. Plaintiff did

none of these things. The "dynamic website" argument is a post hoc rationalization, not a good-faith explanation for eight months of inaction.

In sum, the continued litigation after October 2025 was frivolous. Indeed, if this action had proceeded to summary judgment or trial, Plaintiff would not have had any documentation to support her claims.

## II. PLAINTIFF'S LITIGATION CONDUCT INDEPENDENTLY WARRANTS FEE-SHIFTING AND SANCTIONS

Even assuming the Complaint had an adequate foundation when filed — and the record strongly suggests otherwise — Plaintiff's subsequent litigation conduct independently warrants fee-shifting and sanctions.

### A. Discovery Obstruction Multiplied the Proceedings

Even assuming all six of the undisclosed "non-testifying consultant" evaluations exist and say what Plaintiff's counsel claims, selective descriptions of those evaluations does not excuse nine months of discovery obstruction and evasion, and it underscores the frivolousness of the continued litigation.

Plaintiff offers explanations for portions of the procedural history, but those explanations do not eliminate the objective record detailed in Defendant's initial papers. *Compare* Dkt. Nos. 40 – 40-25 *with* Dkt. No. 45. The record establishes that Plaintiff and her counsel: (1) did not produce any documents in response to Defendant's discovery demands, (2) did not preserve IP addresses, browser artifacts, cookies, internet history, URLs accessed, or related computer data, (3) did not produce Plaintiff's laptop for forensic examination, and (4) served materially shifting discovery responses concerning the internet connection. *See generally* Dkt. No. 45.[1]

[1] This Court and others have imposed sanctions in similar website accessibility lawsuits where plaintiffs and their counsel, including this Plaintiff and her counsel, failed to preserve computer-related data and otherwise engaged in discovery misconduct. *See Pittman v. Hazel and Olive, Inc.*, Case No. 25-cv-7791, at Dkt. No. 49 (N.D. Ill. March

Instead, Plaintiff and her counsel attempt to minimize the significance of their failure to preserve and/or produce any relevant computer related data by characterizing it as "an unresolved discovery disagreement Defendant never brought before the Court." *See id.* at p. 12. That framing inverts the analysis of a record that is replete with Defendant's repeated requests for evidence which were met with months-long delay tactics, evasive and inconsistent responses, and no documents. No prior motion or discovery order is a statutory prerequisite to sanctions or fee-shifting. Defendant repeatedly met and conferred, relied on promised supplementation, and warned on June 17 that it would seek to compel and request sanctions. Plaintiff requested a stipulated dismissal the next day, making immediate motion practice unnecessary. The fact that Plaintiff moved to dismiss this action only a day after Defendant noticed her deposition and advised counsel of the intent to file a motion to compel discovery and seek sanctions confirms that the litigation was abandoned not because the Website suddenly became accessible, but because Plaintiff, her claims, and her counsel could not withstand scrutiny.

**B. <u>Plaintiff's Timing Confirms Tactical Abandonment</u>**

Plaintiff's opposition asserts that her counsel "first concluded on June 18, 2026 that the injunctive relief Plaintiff sought was no longer necessary, and acted that same day." *See* Dkt. No. 45, p. 11. This assertion is not credible. Defendant provided clean audit reports on September 24, 2025, October 3, 2025, October 14, 2025 (four reports), February 18, 2026, and March 6, 2026. *See* Dkt. Nos. 40, 40-1, 40-3, 40-7, 40-9 – 40-12, 40-18 – 40-19. Plaintiff's counsel admitted on October 6, 2025 that Plaintiff had not revisited the Website in approximately five months. *See* Dkt. No. 40-8, p. 8. If Plaintiff's counsel's "non-testifying consultant" found barriers on the Website in October 2025, November 2025, March 2026, and June 4, 2026, why did Plaintiff's

---

19, 2026); *Jimenez v. Hyatt Corp*., 2025 U.S. Dist. LEXIS 148432 (E.D. Cal. 2025).

counsel not identify a single URL, produce a single screenshot, or accept Defendant's offer to conduct joint testing by screenshare?

The answer is evident from the procedural record, which, again, Plaintiff and her counsel do not meaningfully dispute. On June 17, Defendant warned Plaintiff's counsel that it would move to compel and seek sanctions; Plaintiff requested a stipulated dismissal on June 18; Defendant noticed her deposition on July 6, and Plaintiff filed her formal dismissal motion on July 7. *See* Dkt. Nos. 30, 32, 40-1 at ¶¶ 66–67, & 40-25. Thus, the first dismissal request followed the discovery-and-sanctions warning, while the formal motion followed the deposition notice. The Court may reasonably infer tactical abandonment from that sequence together with the preceding months of unfulfilled supplementation and the absence of a reproducible barrier. This is precisely the type of conduct that § 1927 and the Court's inherent power are designed to deter.

## III. DEFENDANT'S DECISION NOT TO FILE A MOTION DOES NOT EXCUSE PLAINTIFF'S CONDUCT

In opposition, Plaintiff treats Defendant's decision not to file a dispositive motion or motion to compel as a reason to deny attorneys' fees. *See* Dkt. No. 45, pp. 11-12. This argument fails for at least three reasons.

First, neither § 12205 nor § 1927 makes a prior merits or discovery order a prerequisite to relief. Second, a defendant's decision to meet and confer, await promised supplementation, and defend a case on the merits does not insulate unreasonable continuation. A prevailing defendant may recover attorneys' fees when the action "was brought in bad faith or when it is 'frivolous, unreasonable, or without foundation.'" *See Simmons v. Vill. of Minier*, 2022 U.S. Dist. LEXIS 91113, at *9 (C.D. Ill. May 20, 2022). That standard examines Plaintiff's conduct, not the defendant's litigation strategy. Third, Defendant asserted mootness as an affirmative defense in its Answer filed October 6, 2025, *see* Dkt. No. 13, ¶ 80, and the undisputed record shows that

Defendant provided Plaintiff's counsel with multiple audit reports detecting no access barriers before and after the Answer was filed. Accordingly, Plaintiff had notice of Defendant's position from the outset of the litigation.

## IV. THE PATTERN OF ABUSE SUPPORTS ENHANCED DETERRENCE

Plaintiff argues in opposition that sanctions and threats of sanctions in other cases involving Plaintiff and/or her counsel are irrelevant to the instant matter. *See* Dkt. No. 45, pp. 14-15. Plaintiff's argument misses the point.

The pattern alone does not form the basis for sanctions here; rather, the pattern demonstrates that prior sanctions and threats of sanctions (including the sanctions imposed by this Court in *Pittman v. Hazel and Olive, Inc.*) are relevant to deterrence after the instant record independently establishes sanctionable conduct. In fact, the Seventh Circuit permits a court to consider disciplinary history as one factor where the instant record independently supports sanctions. *See Fuery v. City of Chicago*, 900 F.3d 450, 467-68 (7th Cir. 2018). The failure of prior measures to deter repetition therefore supports a substantial sanction calibrated to the current misconduct.

## V. PLAINTIFF'S CITED AUTHORITY IS DISTINGUISHABLE

Plaintiff relies in opposition upon *Colon v. HY Supplies, Inc.*, *Baaske v. City of Rolling Meadows*, and *Smith v. Union Pac. R.R.*, for the proposition that courts deny fee requests even where the defendant is the prevailing party. *See generally* Dkt. No. 45. However, each of those cases is distinguishable from the present action, as none of them involved a plaintiff who produced no documents in response to discovery demands, admitted to never revisiting the website at issue, materially changed positions on basic facts, refused joint testing, refused forensic examination, relied on withheld report conclusions, and voluntarily dismissed the case the day after a deposition was noticed and motion practice was imminent.

In *Colon*, the plaintiff sought to dismiss the case because (1) she did not want to travel to attend her deposition in person, turn over her iPhone and computer, and respond to discovery requests requiring production of copious medical records, and (2) the defendant represented that it did not have the financial means to settle the case on terms acceptable to the plaintiff. 2024 U.S. Dist. LEXIS 106988, at *2-3 (N.D. Ill. May 28, 2024). Here, unlike in *Colon*, Plaintiff's reason for seeking voluntarily dismissal of her claims is her admission that the Website is now accessible. *See* Dkt. No. 32. However, Defendant's repeated audits detected no barriers on the Website for over eight months before Plaintiff filed for dismissal. *See* Dkt. Nos. 40, 40-1, 40-3, 40-7, 40-9 – 40-12, 40-18 – 40-19.

In *Baaske*, the Court held that raising issues of first impression should not, without more, lead to a finding that plaintiff's claims were frivolous, unreasonable, or without foundation. 191 F. Supp. 2d 1009, 1018 (N.D. Ill. 2002). As a result, the Court declined to award prevailing party attorneys' fees to the defendant. *See id.* Here, Plaintiff has not raised *any* issues of first impression. Further, unlike in *Baaske*, Plaintiff's counsel's objectively unreasonable conduct supports sanctions.

In *Smith*, the Court noted that the plaintiff should not be charged with conclusions "largely dependent on facts developed during discovery." *See* 2018 U.S. Dist. LEXIS 236866, at *12 (N.D. Ill. July 6, 2018). Here, there were no facts developed during discovery because Plaintiff failed to preserve or refused to <u>produce</u> any documents or evidence whatsoever. The problem is not that discovery revealed unfavorable facts—it is that Plaintiff systematically obstructed discovery and produced nothing in response to discovery demands.

## VI. DEFENDANT PROVIDED THE REQUIRED FAIR ESTIMATE

Plaintiff criticizes Defendant for not submitting contemporaneous billing records with its cross-motion. *See* Dkt. No. 45, pp. 13-14. This criticism reflects a misreading of the applicable rules.

Fed. R. Civ. P. 54(d)(2)(B)(iii) requires a fee motion to "state the amount sought or *provide a fair estimate of it*." Neither 42 U.S. Code § 12205, 28 U.S.C. § 1927, nor the Court's inherent authority requires a more stringent requirement at the threshold stage. Defendant satisfied that requirement by estimating fees incurred since September 24, 2025 excluding then-undetermined fees incurred in responding to dismissal and pursuing the cross-motion. *See* Dkt. No. 40-1, ¶ 71. Defendant seeks the excess fees caused after the primary cutoff or, alternatively, narrower awards after September 24, 2025, which occurred due to the identified continuation, discovery obstruction and evasion, and testing failures. Defendant will submit contemporaneous, segregated billing records promptly as the Court directs. *See* Dkt. No. 40, p. 11.

*Sanglap v. LaSalle Bank FSB*, which Plaintiff relies upon in opposition, does not hold otherwise. *See* 194 F. Supp. 2d 798 (N.D.Ill. 2002). In *Sanglap*, this Court evaluated the reasonableness of costs sought by the prevailing defendant through submitted invoices. *Id.* at 801-03. In doing so, this Court decided not to assess copying costs because it could not determine, based on the invoices, whether "these materials were reasonably necessary." *Id.* at 803. However, *Sanglap did not* hold that a defendant's submission of "fair estimate" of fees in a motion for attorneys' fees was not allowed. *See id.* at 801-03. Nor did this Court hold that a prevailing defendant could not submit billing records following a determination of entitlement to fees. *See id.*

## CONCLUSION

For these reasons and those set forth previously, Defendant respectfully requests that the Court issue an Order: (a) dismissing Plaintiff's complaint with prejudice, (b) granting the instant cross-motion for attorneys' fees and sanctions, and (c) granting Defendant leave to file a supplemental petition seeking recovery of attorneys' fees and costs incurred, including attorneys' fees incurred in responding to Plaintiff's instant motion and filing the instant cross-motion, together with such other and further relief as the Court deems just and proper.

**Dated**: August 19, 2026

**VALENTINE AUSTRIACO & BUESCHEL, P.C.**

By: /s/ Sandy L. Morris
Sandy L. Morris (IL Bar No. 6270309)
300 E. Randolph Street, Suite 3400
Chicago, Illinois 60601
312-238-9545
smorris@vablawfirm.com

**BARCLAY DAMON LLP**
Ross M. Greenky (NY Bar No. 5320106)
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York
315-425-0702
rgreenky@barclaydamon.com

***Attorneys for Defendant Gavrieli Brands, LLC***

**CERTIFICATE OF SERVICE**

I, Sandy L. Morris, an attorney, hereby certify that on this 19th day of August 2026, a copy of the foregoing was filed electronically. Parties may access this filing through the court's system.

/s/ *Sandy L. Morris*